**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

|  |  |  |
|---|---|---|
| SAMARITAN MINISTRIES INTERNATION-AL, a Illinois religious nonprofit corporation, and eight of its members, namely Zachary & Rachel Cordel, Andrew & Heather Heath, Jay & Amy O'Neill, and Nathan & Rebekah Bienhoff, | ) ) ) ) ) ) | **No. 1:25-cv-01250-LF-KK** |
| *Plaintiffs*, | ) ) | |
| v. | ) | |
| ALICE T. KANE, in her personal capacity and in her official capacity as New Mexico Superintendent of Insurance, | ) ) ) | |
| *Defendant*. | ) ) ) | |

## SAMARITAN AND INDIVIDUAL PLAINTIFFS'
## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION. ................................................................................................ 1

II.   OVERVIEW OF STANDING. ........................................................................... 1

III.  OVERVIEW OF CASE: NEW FACTS ESTABLISH STANDING. .................. 2

IV.   REVIEW STANDARDS FOR ISSUE PRECLUSION AND STANDING .......... 5

    A. Defendant Bears a Very Heavy Burden to Show Issue Preclusion ...................... 5

    B. Plaintiffs Bear a Very Light Burden to Show Standing. ................................... 6

    C. All Parts of the Applicable Complaints Are Entitled to Truth/Deference. ......... 6

V.    PRECLUSION OVERVIEW: DEFENDANT'S IMPOSSIBLE BURDEN ............. 7

    A. Issue Preclusion Is the Applicable Strand of Res Judicata Here. .................... 7

    B. Issue Preclusion Has Requirements that Defendant Cannot Meet Here ............ 7

    C. Preclusion Requires Identical Issues Evaluated Under Similar Standards. .......... 8

    D. Abstract Rulings of Law Are Not Subject to Issue Preclusion. ........................ 9

    E. Matters Unaddressed by the Appellate Decision Are Not Subject to Preclusion.... 9

    F. Defendant's Burden, Based on SMI's Entire Record, Is Insurmountable. ........... 10

    G. Defendant Must Also Defeat Exceptions for Changes in Facts or Law. ............ 11

    H. The Timeline for Changes in Fact Differs from That for Changes in Law. .......... 12

VI.   ARGUMENT: RESPONDING TO THE MAIN ASSERTIONS OF THE MTD. ..... 13

    A. Plaintiffs Show Both Non-Manufactured Actual Harm and Future Harm. ......... 13

    B. The Two Holdings of the Tenth Circuit Here Are Not Issue-Preclusive. .............. 14

    C. New Facts and Law Establish Both Material Change and Substantial Risk. ........ 15

    D. *Mahmoud* and *Scott* End Any Debate Over Risk and Standing Here. ................ 17

    E. *Shaw* and *303 Creative* Further Underscore Risk and Standing Here. ................ 19

    F. Defendant Agrees on Lack of Identical Issues Actually and Fairly Litigated ....... 21

    G. Defendant's Timeline for Change of Fact/Law Exception Is Partly Wrong. ........ 21

    H. The Change-in-Law Exception Is Not Relevant to NMIC Provisions Here. ......... 22

    I. Plaintiffs Have Alleged and Explained How NMIC Applies to Samaritan. ........... 22

    J. Plaintiffs Allege Concrete Harms, Not Generalized Grievances. ........................... 23

    K. Defendant's Own Actions Have Bolstered the Credible Threat. ........................... 23

    L. Defendant's Comity Argument Wanes Since *Loper Bright*. .................................... 24

VII. CONCLUSION. .................................................................................................. 24

# I.    INTRODUCTION.

Plaintiff Samaritan Ministries International ("SMI" or "Samaritan") and eight Individual Plaintiffs (collectively "Plaintiffs") file this Response to the Motion to Dismiss (ECF.6) ("**MTD**") of Defendant, who has led the Office of Superintendent of Insurance ("**OSI**") since June 12, 2023. On December 7, 2023, Plaintiffs filed a Verified Complaint ("**VC1**") in 1:23-cv-1091, initiating the prior litigation ("***SMI-I***"), alleging their health care sharing ministry ("HCSM" or "ministry") was threatened by the New Mexico Insurance Code ("NMIC"). On December 20, 2024, this Court dismissed their Second Amended Complaint ("**SAC**") without prejudice for lack of standing. *SMI v. Kane*, 760 F.Supp.3d 1267 (D.N.M. Dec. 20, 2024) (cited herein as "***SMI-I*, 760 F.Supp.3d at ___**"), *aff'd*, 2025 WL 2876772 (10th Cir. Oct. 9, 2025) (cited herein "***SMI-I*, [WL]\*__**").

This is ***SMI-II***, initiated by **VC2** (ECF.1) (12/15/25). The focus now is issue preclusion, MTD at 6-12, which prevents "'repetitive lawsuits over matters [that] have remained substantially static, factually and legally.'" *Herrera v. Wyoming*, 587 U.S. 329, 343 (2019).[1] Little has remained static between *SMI-I* and *SMI-II*. Chiefly: both courts in *SMI-I* ruled they were unauthorized to consider a series of 2024 statements made by Defendant in this Court because the law of this Circuit excludes all jurisdictional facts that arise *after* an *initial complaint*. That law prevented Plaintiffs from curing jurisdictional defects with *post-complaint facts* added to their amended complaints. It required them instead to file this *SMI-II* to have such "new facts" considered. Under controlling law, these facts must be considered *now* and they establish standing beyond doubt.

# II.    OVERVIEW OF STANDING.

As the Tenth Circuit noted in *SMI-I*, "'a plaintiff must show (1) an injury in fact, (2) a

---

[1] Citation omitted. When internal citations are omitted herein, internal 'quotation marks' signifying quoted material are retained. Given the many dates herein, ***Month/Day/Year*** format may be used.

sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *SMI-I*, at \*2 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014)). An injury in fact for element #1 "must be 'concrete and particularized' and '*actual or imminent*.'" *SBA List*, 573 U.S. at 158 (emphasis added). Plaintiffs assert *actual* injury for their standing, *infra* at 4, but they do not rest there.

Plaintiffs also assert *future* injury, and an "'allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *SMI-I*, at \*2 (quoting *SBA List*, at 158). To show an *injury in fact* for *future-injury* standing, "Plaintiffs must allege 'an intention to engage in a course of conduct arguably [1] affected with a constitutional interest, [2] but proscribed by statute, and [3] there exists a credible threat of prosecution thereunder.'" *SMI-I*, at \*3 (quoting *SBA List*, at 159) (bracketed numbers added).

In *SMI-I*, the Tenth Circuit considered only future injury and then only elements #2 and #3 of *SBA List* injury in fact ("**SBA IIF #2 & #3**") (arguably proscribed & credible threat). And that consideration excluded facts that would establish the elements considered. Constitutional interest (*SBA IIF #1*) remains uncontested, *SMI-I*, 760 F.Supp.3d at 1274, and clearly alleged, VC2 at ¶44.

## III.    OVERVIEW OF CASE: NEW FACTS ESTABLISH STANDING.

Plaintiffs filed *SMI-I* on December 7, 2023. ECF.1. Throughout the following year, Defendant made a series of statements *in this Court* in *SMI-I* and in the parallel *Liberty* case.

In her March 4, 2024 admission in this Court in *Liberty*, she faulted "Plaintiffs' operation of a health care ministry in New Mexico *without* a Certificate of Authority *despite the notifications from [OSI] in its Press Releases*, dated December 3, 2019, March 26, 2020, [and March 2021] regarding HCSMs. The *March 26, 2020 [release] from Superintendent Toal specifically indicates that a HCSM is an unauthorized insurance product under the New Mexico Insurance Code*. In the

same press release Superintendent Toal *also stated* that a *Cease and Desist Order* was being issued against a *HCSM that day*. The doctrine of laches is invoked because Plaintiff did *not come forward to rectify its unauthorized status with OSI*." VC2 at ¶51 (emphasis added). In her briefs of February 19 and December 19, 2024 in *SMI-I*, Defendant asserted that "Samaritan [fits the NMIC] definition of insurance," "Samaritan's continued operations outside of [NMIC] are harmful and adverse to the public interest," and if this case proceeds, she will countersue Samaritan. VC2 at ¶64.

The above 2024 judicial admissions of Defendant prove she had determined that: (a) all HCSMs are "unauthorized insurance products" under NMIC, (b) every HCSM operating in N.M. without a license does so illegally, (c) these determinations by OSI have been *the law* since at least its 3/26/20 release, (d) all HCSMs have been on notice since 3/26/20 with a duty to submit to OSI to rectify their "unauthorized status," (e) "Samaritan [fits the NMIC] definition of insurance," (f) "Samaritan's continued operations outside of [NMIC] are harmful and adverse to the public interest," and (g) if this case proceeds, she will countersue Samaritan. VC2 at ¶¶51, 64.

The above judicial admissions (jurisdictional facts) established Plaintiffs' standing beyond doubt. And Plaintiffs fully alleged and presented them to the Court in their amended complaints.

But both *SMI-I* courts excluded them all from standing analysis because all they occurred *post-complaint* (after 12/7/23). As the Tenth Circuit explained: "To begin, Plaintiffs argue that the district court should have considered post-complaint statements Defendant made (in her briefs before the district court in this case and in discovery in a different case) as evidence in support of standing. But standing is evaluated as of the time an action begins." *SMI-I*, 2025 WL 2876772, at *2 (citing, *inter alia*, *SUWA v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013)). "And the statements Plaintiffs wanted the district court to consider related to facts that arose after they filed their [original] complaint. Thus, the district court correctly concluded that the post-complaint statements

cannot establish standing to proceed in this action." *Id*. That holding controlled *SMI-I*.

That holding was dictated by this Circuit's rule that prevents post-complaint facts from curing a defect in standing. It "forces a plaintiff to go through the unnecessary hassle and expense of filing a new lawsuit when events subsequent to filing the original complaint have fixed the jurisdictional problem." *Scahill v. D.C.*, 909 F.3d 1177, 1184 (D.C. Cir. 2018) (stating majority rule); *id*. at 1183 (citing *SUWA* for minority rule). Plaintiffs had to file *SMI-II* only because this rule excluded all the above 2024 jurisdictional facts. VC2 at ¶¶51, 64. As *SMI-I* explicitly excluded all these post-complaint facts they obviously cannot be issue-precluded now in *SMI-II*.

Those facts prove that, as of 3/4/24, Samaritan faced ***at least*** "a substantial risk [of NMIC-enforcement] harm," *supra* at 2, requiring it to discontinue prospective N.M. memberships, divert resources, incur substantial costs to protect its rights, and suffer reputational injury, VC2 at ¶¶251-69, causing it ***actual*** injury, *supra* at 2; VC2 at ¶¶251-65. They also prove Plaintiffs' conduct was "arguably proscribed by [NMIC] and that [Defendant] might credibly enforce [it]," *Scott v. Allen*, 153 F.4th 1088, 1095 (10th Cir. 2025) (*SBA IIF #2 & #3*), causing ***future*** injury, *supra* at 2.

As for future injury, Plaintiffs "need not show [their] conduct *actually* violates the law, just that it *arguably* does." *Id*. at 1096 (emphases *retained*). "This is not a high bar[.]" *Id*. As to credible "'threat of prosecution*, the evidentiary bar that must be met is extremely low*[.]'" *Id*. (emphasis *retained*). Any greater burden is a "higher standard than our precedent requires." *Id*. at 1095.

Samaritan "meets this test [because Defendant] [her]self refuses to disavow that [SMI]'s intended actions do not fall under the statute." *Id*. at 1097. To the contrary, in her 2024 admissions, she *avows* that Samaritan's activities *do* fall under the statute. *Supra* at 2-3. The *SMI-I* holdings on *SBA IIF #2 & #3* cannot preclude these mandatory jurisdictional criteria (nor the proscriptive statutes Plaintiffs alleged), because those issues were never considered in *SMI-I*. *Infra* at 7-11.

Under such slight standards, the post-VC1 facts established *at least* future-injury standing. *Infra* at 13-14. These facts alone established injury in fact "in light of all the evidence we now have, construed in the light most favorable to Appellants and making reasonable inferences in their favor." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023). Combine them with VC2's allegations and new legal developments, *infra* at 15-23, and any doubt disappears.

Without even addressing these facts, Defendant implies they are precluded as untimely. MTD at 9 (citing nonbinding cases). This would amount to, "Heads I win, Tails you lose." It would require this Court to hold that, while *SMI-I* held these admissions were premature for use in *SMI-I* and could only be raised in an *SMI-II*, *SMI-II* cannot consider them because they were "actually litigated and decided" in *SMI-I* (i.e., that Plaintiffs had a "full and fair opportunity to litigate" them in *SMI-I*). *Infra* at 7-8. As shown below, the law does not permit such an absurd catch-22.

## IV.    REVIEW STANDARDS FOR ISSUE PRECLUSION AND STANDING.

### A.    Defendant Bears a Very Heavy Burden to Show Issue Preclusion.

"'[T]he party asserting preclusion bears the burden of showing *with clarity and certainty* what was determined by the prior judgment,' and '[i]ssue preclusion will apply only if it is *quite clear* that this requirement has been met.'" *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 49 (2d Cir. 2003) (emphases retained) (quoting *BBS Norwalk One v. Raccolta,* 117 F.3d 674, 677 (2d Cir. 1997), which quoted *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992)).

The rule is the same in this Court. *Kinslow v. Williams*, 2007 WL 9734022, at \*7 (D.N.M. Apr. 4, 2007) (citing *Postlewaite* and *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000), both of which ultimately relied on *Clark*); *accord In re Vickery*, 2019 WL 1417200, at \*9 (D. Colo. Mar. 29, 2019) (quoting *Hydranautics*). Defendant cannot meet this heavy burden here. And any and every ounce of doubt should be resolved in Plaintiffs' favor.

### B.     Plaintiffs Bear a Very Light Burden to Show Standing.

First, Plaintiffs focus here on the injury element, as no other element has been contested. In any event, as in *Shaw v. Smith*, 166 F.4th 61, 75 n.7 (10th Cir. 2026), "Plaintiffs established that Superintendent [Kane] serves as the final authority of [OSI], and that [she] is ultimately responsible for authorizing [and enforcing OSI statutes,] policies and practices. As such, if they suffered injury, there is both causation and redressability with respect to Superintendent [Kane]."

Second, as to future injury, only certain aspects of *SBA IIF #2 & #3* were actually decided, and what was decided was without consideration of the 2024 jurisdictional facts. *SMI-I*, at *2-3. As shown *supra* at 4, Plaintiffs "need not show [their] conduct *actually* violates the law, just that it *arguably* does," and "'*the evidentiary bar* [for credible threat] *is extremely low*,'" *Scott*, 153 F.4th at 1096 (emphases *retained*). Any higher burden is a higher than "precedent requires." *Id*. at 1095. *Scott* italicized both phrases and applied them with new rigor. And *Shaw*, 166 F.4th at 75, just imbued the alternative-timing holding of *SBA List*—"allegation of future injury may suffice if … there is a 'substantial risk' that the harm will occur"—with fresh force. *Infra* at 19-20.

Third, as to *actual-injury standing* for retrospective relief, since the Tenth Circuit in *SMI-I* did not address this Court's discussion of this alternative ground on standing, and since new facts must now be considered, that issue cannot be precluded. *Infra* at 9-10. And *Bost v. Ill. State Bd. of Elections*, 146 S.Ct. 513 (2026) (not a preenforcement case) just reinforced the role of that same "substantial risk" standard in establishing actual-injury standing. *Infra* at 14, 16-17.

### C.     All Parts of the Applicable Complaints Are Entitled to Truth/Deference.

"*Regardless* of the stage of litigation[, standing] *remains focused* on whether [Plaintiffs] had a *personal stake* in a case or controversy *at the time* they filed their complaint, *in light of all* the *evidence we now have*, construed in the light *most favorable* to [them] and making *reasonable*

inferences in their favor." *Rio Grande*, 57 F.4th at 1162 (emphasis added). Courts "**must** consider the complaint *in its entirety*, as well [as] *documents incorporated into the complaint by reference*, and matters of which a court may take *judicial notice*." *Tellabs v. Makor Issues*, 551 U.S. 308, 322 (2007) (emphasis added). This includes agency filings, *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 867 n.10 (10th Cir. 2023), and "documents incorporated by reference in the complaint and documents referred to [in] the complaint, when no party disputes their authenticity," *Purgatory Recreation v. U.S.*, 157 F.4th 1173 n.3 (10th Cir. 2025) (cleaned up). Plaintiffs have "much more flexibility in opposing a" MTD. *Geinosky v. Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## V.    PRECLUSION OVERVIEW: DEFENDANT'S IMPOSSIBLE BURDEN.

### A.    Issue Preclusion Is the Applicable Strand of Res Judicata Here.

*Res judicata* "now comprises two distinct doctrines regarding the preclusive effect of prior litigation. The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case[.]" *Lucky Brand Dungarees v. Marcel Fashions*, 590 U.S. 405, 411 (2020). "The second doctrine is claim preclusion (sometimes itself called res judicata) [which] prevents parties from raising issues that could have been raised and decided in a prior action[.]" *Id*. at 412. The parties agree that issue preclusion applies here. MTD at 6-7; *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218-19 (10th Cir. 2006).

### B.    Issue Preclusion Has Requirements that Defendant Cannot Meet Here.

"[In] federal law, 'issue preclusion attaches only [w]hen an issue of *fact or law* is *actually litigated and determined* by a valid and final judgment, and the determination is essential to the judgment.'" *Arizona v. Calif.*, 530 U.S. 392, 414 (2000) (emphasis added). It prevents "'repetitious lawsuits over matters [that] have remained substantially static, factually and legally.'" *Herrera*, 587 U.S. at 343. The Tenth Circuit requires that: "'(1) the issue previously decided is *identical*

with the one presented in the action in question, (2) the prior action has been *finally adjudicated on the merits,* (3) the party against whom the doctrine is invoked was a *party or in privity with a party* to the prior adjudication, and (4) the party against whom the doctrine is raised had a *full and fair opportunity to litigate* the issue in the prior action.'" *Stan Lee Media v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (emphases *retained*). "'[A]mong the most critical guarantees of fairness [is] that the party to be estopped had not only a full and fair opportunity but an adequate incentive to litigate to the hilt the issues in question.'" *Hurd v. D.C.*, 864 F.3d 671, 680 (D.C. Cir. 2017) (quoting *Haring v. Prosise*, 462 U.S. 306, 311 (1983)). No such fairness occurred here.

### C.    Preclusion Requires Identical Issues Evaluated Under Similar Standards.

Issue preclusion requires that "the issue previously decided is *identical* with the one presented in the action in question." *Stan Lee*, 774 F.3d at 1297. "[It] must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Com'r v. Sunnen*, 333 U.S. 591, 599 (1948). Issues cannot "be 'identical if the second action involves application of a different legal standard[.]'" *B&B Hardware v. Hargis Indus.*, 575 U.S. 138, 154 (2015). Even where the "same facts are involved" (which is not SMI's case) "but the *legal significance* of those facts differs because of [a] *demonstrable difference* in the applicable legal standard, preclusion does not apply." *Aviles-Tavera v. Garland*, 22 F.4th 478, 483 (5th Cir. 2022) (emphasis added). "Whatever the burden was, it required [the party] to present more than just a preponderance of the evidence." *Truman v. Johnson*, 60 F.4th 1267, 1274 (10th Cir. 2023).

Here, we have new facts that establish standing. In any case, when *SMI-I* evaluated those facts for *SBA IIF #2 & #3* under a "higher standard" than "precedent requires," *supra* at 6 (quoting *Scott*, 153 F.4th at 1095), it did not accord those facts their due "legal significance." This is *not* a

8

question of error in or relitigation of *SMI-I*, but of *preclusion*. Applying *Truman*: "Given [*SMI-I*]'s apparent application of a burden greater than it would [otherwise be, *SMI-II*] couldn't apply issue preclusion." 60 F.4th at 1274. "And because [Defendant] bore the burden on issue preclusion, [she had] to show that [SMI] had faced the same standard in [*SMI-I*]—or a lower standard—than [it] does here." *Id*. at 1277. The opposite is true. *Infra* at 22-23. Preclusion fails.

### D.    Abstract Rulings of Law Are Not Subject to Issue Preclusion.

There is a well-settled "'rule that issue preclusion does not attach to abstract rulings of law.'" *Matter of Westmoreland Coal*, 968 F.3d 526, 532 (5th Cir. 2020); *Alabama v. U.S. Army Corps*, 704 F. Supp. 3d 20, 73 (D.D.C. 2023). "Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action … are not estopped from insisting that the law is otherwise[.]" *U.S. v. Stauffer Chem.*, 464 U.S. 165, 170 n.3 (1984). "The distinction is between an abstract legal proposition and the application of that proposition to particular facts." *Id*. at 182 n.2 (White, J., concurring). Such an "abstract legal proposition" is neither "actually litigated," *Arizona*, 530 U.S. at 414, nor "essential to the judgment," *id*., nor "necessary" to it, *Stan Lee*, 774 F.3d at 1298 n.1. The "'essential to the prior judgment' … limitation 'is rooted in principles of fairness' and 'ensures that preclusive effect is not given to determinations that did not receive close judicial attention[.]'" *U.S. v. Reyes-Romero*, 959 F.3d 80, 94 (3d Cir. 2020).

Here, for example, the Tenth Circuit said NMIC's "statutory definition of insurance does not proscribe any conduct." *SMI-I*, at *3; *id*. ("as discussed above, the statute Plaintiffs challenge does not facially proscribe any conduct"). This abstract ruling is not preclusive. *See infra* at 9.

### E.    Matters Unaddressed by the Appellate Decision Are Not Subject to Preclusion.

Issue preclusion often "does not apply to issues an appellate court declines to consider on appeal, even when [it] affirms the overall judgment." *Pogue v. Principal Life Ins. Co.*, 979 F.3d

534, 536 (6th Cir. 2020). Any "alternative determination cannot have preclusive effect until the appellate court analyzes it and decides that the court of first instance correctly resolved it." *In re Baylis*, 217 F.3d 66, 72 (1st Cir. 2000). *See Levi Strauss v. Abercrombie & Fitch*, 719 F.3d 1367, 1373 (Fed. Cir. 2013) (where lower tribunal addressed "broader set of issues," "the difference in scope of the issues" suggests "no improper second bite at the apple").

 "Thus, even 'if a decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, relitigation of the issue is not precluded under the doctrine of issue preclusion, because the issue was not necessary or essential to the judgment.'" *Stan Lee*, 774 F.3d at 1298 n.1; *accord Turney v. O'Toole*, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990). "[*Turney*] declared that when there were two grounds for a prior judgment, neither of them was entitled to preclusive effect because neither should be considered to have been necessary for the judgment." *In re Gilmore*, 2004 WL 2044116, at *5 (Bankr. D. Kan. July 16, 2004); *N.T. v. Espanola Pub. Schs.*, 2005 WL 6168483, at *10 (D.N.M. June 21, 2005) (same).

This principle applies here. For example, the Tenth Circuit in *SMI-I* did not address this Court's discussion of actual-injury/retrospective standing. That issue, especially now that the 2024 admissions of Defendant are relevant, cannot be precluded. *Supra* at 2-3 & *infra* at 15-17, 22-23.

### F.    Defendant's Burden, Based on SMI's Entire Record, Is Insurmountable.

To see which and where issues of "fact or law [were] actually litigated and determined," *Arizona,* 530 U.S. at 414, this Court must "examine the record of the prior proceeding, including the pleadings and evidence, keeping in mind that the party asserting the preclusion bears the burden of showing 'with clarity and certainty what was determined by the prior judgment,'" *Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (quoting *Jones v. City of Alton,* 757 F.2d 878, 885 (7th Cir. 1985)); *accord United Access Techs. v. Centurytel Broadband*, 778 F.3d 1327, 1331 (Fed. Cir.

2015) (quoting *Jones*). "We believe [this] burden was *insurmountable*, because we believe plaintiff was *prevented from presenting his evidence*[.]" *Jones*, 757 F.2d at 886 (emphasis added).

Defendant's burden here is *insurmountable* because she does not (and cannot) dispute that *SMI-I* prevented Samaritan from presenting/using its evidence of, and actually litigating, her post-VC1 admissions. *Supra* at 2-3. That *evidence* and *issue* cannot be precluded now.

**First**, Plaintiffs were "prevented from presenting [this] evidence." *Id*. **Second**, that issue was never "actually litigated and determined." *Arizona,* 530 U.S. at 414. **Third**, the issue "actually decided" in *SMI-I* was not "identical with" issue "presented in" *SMI-II*, as required by law, *supra* at 7-8, and further addressed *infra* at 15-17. **Fourth**, *SMI-I* prohibited Plaintiffs from litigating that issue *at all*—much less *fully* and *fairly*—as required by law, *supra* at 7-8, and further detailed *infra* at 15-17. **Fifth**, the Tenth Circuit's sole reason to find against Plaintiffs on *SBA IIF #2* grounds is not precludable. The panel only determined that NMIC's statutory "definition of insurance does not proscribe any conduct." *SMI-I*, at *3; *id*. (it "does not facially proscribe any conduct"). It never actually litigated and determined that other statutes, e.g., those Defendant enforces against HCSMs (which she admits apply to Samaritan), do not proscribe Plaintiffs' conduct, much less *arguably* so. *Infra* at 14-15, 19-21. **Sixth**, even if Defendant could satisfy her heavy burden, *supra* at 5, to establish every element of issue preclusion above, she cannot defeat its exceptions, below.

## G.    Defendant Must Also Defeat Exceptions for Changes in Facts or Law.

To be clear, Plaintiffs need not prevail on this *exception* to issue preclusion since Defendant cannot establish issue preclusion in the first place. But since Defendant argues the exception, and since it applies here (if needed) to Plaintiffs' benefit, they explain and argue it below.

With emphases added: "*Even when the elements* of issue preclusion are *met*[, an] *exception* may be warranted if there has been an intervening 'change in [the] applicable *legal context*,'"

*Herrera*, 587 U.S. at 343, i.e., the "'controlling *facts* or *legal principles*,'" *id*. This exception applies when applying it to "changed circumstances may not 'advance the *equitable administration of the law*.'" *Id*. Thus, issue preclusion may be inapt where: (1) there has "been a significant 'change in the *legal climate*,'" *Montana v. U.S.*, 440 U.S. 147, 161 (1979); or (2) there is "a concern that *modifications* in 'controlling *legal principles*,' could render a *previous determination inconsistent* with *prevailing doctrine*," *id*.; or (3) a new "*judicial declaration*" or "the *clarification and growth* of [applicable] principles" so "change the legal atmosphere" or "legal climate" as "to render inapplicable [the] doctrine of collateral estoppel[,]" *Sunnen*, 333 U.S. at 600, 606.

With emphases and [numbers/letters] added, Tenth Circuit cases invoke this exception when: "'[1] a new determination is warranted in order to [a] take account of an intervening *change* in the applicable *legal context* **or** [b] *otherwise avoid inequitable administration of the laws*,'" *Boulter v. Noble Energy*, 74 F.4th 1285, 1289 (10th Cir. 2023) (emphasis added), or "'[2] where a jurisdictional defect [a] has been cured or [b] loses its controlling force,'" *Park Lake Res. Ltd. v. U.S.D.A.* 378 F.3d 1132, 1137 (10th Cir. 2004). Any one of these suffices.

The prior exclusion of Defendant's admissions meets each test above. Those *jurisdictional facts* alter the standing analysis. ***First***, they definitively state Samaritan was/is violating the law. *Infra* at 15-17, 22-23. ***Second***, they provide each part of the grounds Defendant uses to prosecute all HCSMs: HCSMs are "by definition" "insurance products" and/or "health benefit plans" under NMIC, VC2 at ¶45(a)-(b) (citing the statutes), which *ipso facto* subjects them to NMIC *licensure*, which they lack (and must lack or else end their ministries), *ergo* they are subject to all NMIC penalties. *Id*. ***Third***, preclusion here would invert the "equitable administration of the law."

### H.    The Timeline for Changes in Fact Differs from That for Changes in Law.

To benefit Samaritan, any "'additional factual allegations'" must have arisen ***after*** 12/7/23,

"'the time it filed its complaint in [the prior litigation],'" *Park Lake*, 378 F.3d at 1137 (bracketed material *retained*); *id*. at 1138 ("additional facts that the plaintiff was aware of from the beginning of the suit"); and **before** 12/15/25, the date it filed this suit. This **12/7/23–12/15/25 fact timeline** includes all 2/19/24–12/19/24 admissions of Defendant. Any *legal* changes (on legal issues other than standing) actually litigated must have arisen **after** 12/20/24, the date of the preclusive dismissal, *Boulter*, 74 F.4th at 1286, 1290, and **before** 12/15/25.[2] This **12/20/24–12/15/25 legal timeline** has limited application here, as most non-preclusion cases cited by Plaintiffs are standing cases that establish controlling jurisdictional law. Since Defendant's admissions of jurisdictional facts must be evaluated under prevailing jurisdictional law, all controlling decisions on such law (regardless when issued) must govern. Any other approach would result in a distortion of that law.

## VI.    ARGUMENT: RESPONDING TO THE MAIN ASSERTIONS OF THE MTD.

"Courts sometimes make standing law more complicated than it needs to be." *Bost*, 146 S.Ct. at 523. Plaintiffs now address Defendant's assertions in the order in which she raises them.

### A.    Plaintiffs Show Both Non-Manufactured Actual Harm and Future Harm.

Defendant argues that, under this Court's *SMI-I* decision, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." MTD at 4. This is an aspect of the MTD's focus on "imminent/ce" of harm. *Id*. at 4 (three mentions), at 10 (one), at 11 (two). Relatedly, Defendant notes this Court's finding against retrospective relief for past harm. MTD at 4. These points err as follows.

**First**, the Tenth Circuit in *SMI-I* addressed neither manufactured nor retrospective harm. Since neither was addressed, neither is precluded. *Supra* at 9-10. **Second**, all 2/19/24–12/19/24

---

[2] As the case excerpts in the previous section show, this *exception* has no application to the NMIC statutes at issue, which may or may not have "been significantly changed," MTD at 10, i.e., amended, "after Judge Strickland issued her order" of dismissal on 12/20/24, *id*. *See infra* at 22.

jurisdictional facts, *supra* at 2-3, change the analysis of *the harm* (a) by making it, if not imminent, certainly impending, or (b) by at least creating a *substantial risk* that it will occur, *infra* at 15-20.

      **Third**, since those new facts establish the "substantial risk of harm" as of at least 3/4/24, Plaintiffs' self-censorship and prudent response (e.g., ceasing enrolling new members in N.M.), at least since 3/4/24, cannot be manufactured. In her judicial admissions in this Court, Defendant was crystal clear that Samaritan had been operating illegally in N.M. since at least 3/26/20 and faced severe penalties starting from 3/26/20 forward. *Infra* at 15-17, 22-23. That meant *new* statutory crimes and fines for each new Samaritan member in N.M., VC2 at ¶¶47, 56, 61, plus penalties *retroactive* to 3/26/20 notice, *id.* at ¶251, which is precisely how OSI treated Liberty, *id.* at ¶288(f). Any "reasonable organization would refrain from desired [activities that] would subject it to statutory penalties[.]" *Rio Grande*, 57 F.4th at 1165. It would have been both unreasonable and unfair to Samaritan, its members, and its prospective N.M. members to enroll the latter under this cloud. Samaritan acted wisely and, in any event, manufactured nothing—rather, it was Defendant who made definitive post-VC1 statements establishing Plaintiffs' standing. *Infra* at 15-17, 22-23.

      **Fourth**, the new facts reinforce both actual and future injury. *Infra* at 15-17. **Fifth**, *Bost* rein-forces this. Plaintiffs do not "'manufacture standing by voluntarily' incurring costs [if they] incur those costs to 'mitigate or avoid' a 'substantial risk' of … harm." 146 S.Ct. at 522.

### B.    The Two Holdings of the Tenth Circuit Here Are Not Issue-Preclusive.

      Defendant in MTD at 5 reduces the Tenth Circuit's *SMI-I* decision to two interrelated holdings from its final paragraph: "But, as discussed above, the statute Plaintiffs challenge does not facially proscribe any conduct, let alone the conduct they wish to engage in. Thus, Plaintiffs have not shown that the injury they fear is 'certainly impending' or that 'there is a substantial risk that the harm will occur.'" *SMI-I*, at *3. Neither holding is preclusive here.

14

First, Defendant cites the holding that the insurance-definition provision of NMIC that "Plaintiffs challenge does not facially proscribe any conduct" as defeating *SBA IIF #2*. This holding was not preclusive for several reasons. (a) Such an abstract holding has no preclusive effect. *Supra* at 9. (b) It fails to address, much less actually decide, the effect (if any) of the statutes incorporated into the SAC. *Infra* at 22. (c) Plaintiffs are aware of no authority that required them to list every possible statute or legal theory. Only *claim preclusion* applies to issues that "could have been raised and decided in a prior action." *Lucky Brand*, 590 U.S. at 412. *Infra* at 7.

Second, Defendant cites the holding that Plaintiffs failed to show their feared injury was "certainly impending" or a "substantial risk" as defeating *SBA IIF #3*. That holding was not preclusive for at least two reasons. (a) It expressly depends ("Thus, ….") on the non-preclusive abstract holding that immediately precedes it. (b) It takes no account (nor could it) of the new facts that establish at least "substantial risk," if not "certainly impending." *Infra* at 15-17.[3]

### C.    New Facts and Law Establish Both Material Change and Substantial Risk.

Defendant errs in reasserting that Plaintiffs allege "self-inflicted" harm and "fail to identify any material change in circumstances" that arose in the proper time frame. MTD at 6. Both of these assertions are linked to "substantial risk." While both were briefly addressed above, *supra* at 13-14, they are more fully addressed below, in reverse order, with appropriate context provided.

First, Plaintiffs obviously identified a "material change in circumstances" with the crucial

---

[3] Defendant says the Tenth Circuit held Plaintiffs "failed to allege any other provision of the insurance code that prescribed [sic] their conduct." MTD at 5 (citing *SMI-I*, at *3). Even if this qualifies as a holding: (1) it does *not* mean that *no* statute proscribed Plaintiffs' conduct, (2) the applicable statutes were never litigated and decided by either *SMI-I* court, and (3) to the extent they were addressed by this Court, they were not by the Tenth Circuit, *id.* at 9. Defendant admits these statutes *do* proscribe Plaintiffs' conduct, *supra* at 2-3; and OSI cited and enforced them all in its HCSM enforcement filings that Plaintiffs incorporated in *SMI-I*, which cited agency orders and hyperlinked filings were part of *SMI-I* pleadings. *See SWUS Ctr. v. M.I.T.*, 158 F.4th 1, 9 n.6 (1st Cir. 2025). None of these issues were actually litigated and decided; they cannot be precluded.

2/19/24–12/19/24 admissions of Defendant. These admissions defeat the basic requirements of issue precision—on which Defendant bears a heavy burden—for all the reasons given *supra* at 10-11. They also fall within the 12/7/93–12/15/25 fact timeline for the exception. *Supra* at 12-13.

Context helps. In all three MTDs in *SMI-I*, Defendant said she had "made no determination whether Samaritan's program constitutes the 'business of insurance.'" MTD-1 (ECF.4; 1/4/24) at 10; MTD-2 (ECF.42; 8/7/24) at 14; MTD-3 (ECF.52; 10/2/24) at 14. Then she contradicted her position by declaring in this Court her series of determinations about Samaritan: that Samaritan not only operated a program "similar" to those she was prosecuting[4] but was insurance[5] operating harmfully/adversely/illegally outside NMIC and that she would countersue Samaritan if this case proceeds. Defs. Briefs at ECF.18 (2/19/24) at 8, 17-18; ECF.20 (3/11/24) at 2 & 6; ECF.63 (12/19/24) at 9 & 22-23; *supra* at 2-3 (citing VC2 at ¶64); *infra* at 22-23. Defendant repeated her most damning statements in this Court on 12/19/24, ECF.63 at 9 & 22-23, and advised the Court that there was nothing "preventing [her from] directing Samaritan to cease and desist," *id.* at 8. For Defendant now to suggest that her series of post-VC1 statements made by her in this Court about Samaritan do not qualify as a "material change in circumstances" defies reality.

Second, the *substantial risk* validated by those admissions created (a) *actual* compensable *and* irreparable injuries *and* (b) *likely future* such injuries. This is confirmed by *Bost*, 146 S.Ct. at 521-24 (the majority and the "Barrett/Kagan" concurrence agreed on substantial-risk analysis) and *Shaw*, 166 F.4th at 75-77 (unanimous as to this analysis). *Bost* was an actual-injury case, whereas *Shaw* was a future-injury/preenforcement case. Both rested on *substantial risk of harm*.

---

[4] *See* MTD-1 at 9 ("similar programs [to] Samaritan," e.g., "Christian Care Ministry," found by some adjudicators to "constitute … insurance"); *accord* MTD-2 at 13 (same); MTD-3 at 13 (same).
[5] Defendant went further in her 3/4/24 discovery response, certifying that all HCSMs (obviously including Samaritan) are "unauthorized insurance products" in violation of NMIC. *Supra* at 2-3.

"Pocketbook harm is a traditional Article III injury. That is so not only when a law directly imposes costs on a plaintiff, but also when a plaintiff 'reasonably incur[s] costs to mitigate or avoid' the 'substantial risk' of a harm caused by a statute." *Bost*, 146 S.Ct. at 524 (Barrett/Kagan). The majority agreed, *id*. at 522, but held that financial injury was not required in the face of the election-integrity injury. Reputational harms also are "classic Article III injuries." *Id*. at 520. Samaritan alleges both types of actual and ongoing harm with increasing detail. VC2 at ¶¶251-69 (specifying the type of harm, how and why it occurred, and existing evidentiary support therefor).

The gravest harm remains constitutional. Any "'loss of First Amendment freedoms, for even *minimal periods* of time, *unquestionably* constitutes irreparable injury.'" *Mahmoud v. Taylor*, 606 U.S. 522, 569 (June 27, 2025) (emphasis added). Even "any *potential* loss of First Amendment freedoms—*however small*—also establishes irreparable injury." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. Apr. 30, 2024) (emphasis added). And Defendant's "Restrictions, by their [very] nature, *have* chilled [Plaintiffs'] protected speech and [religious exercise]—again establishing irreparable injury." *Id*. (emphasis *retained*). *See also Does 1-11 v. Bd. of Regents*, 100 F.4th 1251, 1268-81 (10th Cir. May 7, 2024) (thoroughly analyzing the First Amendment harms).

All the above harms are both actual and ongoing, for both Samaritan and eight Individual Plaintiffs, establishing standing for all, on both actual and future-injury grounds. "They have an obvious personal stake in the" outcome, *Bost*, 146 S.Ct. at 520, the issue on which "standing inquiry remains focused" regardless "of the stage of litigation," *Rio Grande*, 57 F.4th at 1162. As "only one plaintiff needs standing for a suit to proceed," *Bost*, 146 S.Ct. at 519 n.3, and there are nine Plaintiffs here, with both actual and future injuries, the MTD must be denied.

### D.    *Mahmoud* and *Scott* End Any Debate Over Risk and Standing Here.

Both *Mahmoud* (6/27/25) and *Scott* (9/3/25) fall within the 12/20/25–12/15/25 legal time-

line, *supra* at 13, and are "modifications" of "controlling legal principles." *Montana*, 440 U.S. at 161. They qualify for the exception, but don't need it. They govern here regardless. *Supra* at 13.

*Mahmoud* rejected the "view that the record before us is too 'threadbare' to demonstrate a burden on religious exercise [because] when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit." 606 U.S. at 559-60. "Instead, to pursue a pre-enforcement challenge, a plaintiff must show that 'the threatened injury is certainly impending, *or there is a substantial risk* that the harm will occur.'" *Id.* at 560 (quoting *SBA List*) (emphasis added). "Here, the [plaintiffs] have undoubtedly made that showing." *Id.*

Inserting SMI's facts shows how Plaintiffs here also *undoubtedly* establish standing. "[OSI cannot now] dispute that it is [enforcing NMIC against HCSMs], that it is requiring [them to comply with NMIC], and that it has encouraged [if not required them to be licensed]." *Id.* "We do not need to 'wait and see' how a particular [NMIC statute] is used in a particular [case] on a particular day before evaluating [Plaintiffs]' First Amendment claims. We need only decide whether—if [Plaintiffs] act according to the clear and undisputed instructions of [OSI]—a burden on religious exercise will occur." *Id.* "Besides, it is not clear how [OSI] expects [Plaintiffs] to obtain specific information about how [and when it will choose to enforce NMIC against them, as OSI] has stated that it will not [limit itself to any specific enforcement criteria]. In circumstances like these, where [OSI] has clearly stated how it intends to proceed, [Plaintiffs] may base their First Amendment claim on [OSI]'s representations." *Id.*[6] *Mahmoud* controls for all purposes.

*Scott* modified standing laws in both similar and additional ways. **First**, it shifted the focus to the "risk" of harm. 153 F.4th at 1096 ("risk of criminal liability"; "risk an actual arrest").

---

[6] *Accord 303 Creative v. Elenis*, 6 F.4th 1160, 1171-75 (10th Cir. 2021), *rev'd on other grounds,* 600 U.S. 570 (2023). *303 Creative* is on point and discussed further *infra* at 19-21.

**Second**, it eased the burden to prove risk. *Id.* ("*arguably*"; "*extremely low*"). **Third**, it shifted the inquiry from (a) whether Plaintiffs' intended conduct is arguably "proscribed by statute" to (b) whether it "*arguably* … violates the law.*" Id.* The latter was more than a grammatical shift from passive to active voice. Here, it inquires whether Plaintiffs' conduct "*arguably*" violates "the law," *id.*, (which Defendant avows it did/does), not whether it is actually "proscribed" by some "statute," much less a definitional statute that, standing alone, cannot proscribe anything, *supra* at 9. Here, Defendant determined what *the law* required and that Samaritan was *violating it.* VC2 at ¶¶45-88.

   **Fourth**, *Scott* emphasized that the law does "not require plaintiffs to present facts against their own innocence," *id.*, as it does "not require the plaintiff to risk an actual arrest, prosecution, or other enforcement action," *id.* Here, Plaintiffs need not agree with Defendant that their ministry is an "insurance product" or a "health benefits plan," *infra* at 22-23; VC2 at ¶45(a)-(b) (statutes), which alone would subject it to NMIC and its statutory penalties, *supra* at 15-17. *Scott* ensures Plaintiffs need not concede statutory violations or incriminate themselves. It is enough to allege their ministry "*arguably* … violates the law.*" Id.* That is the point. Plaintiffs plainly have done so.

### E.    *Shaw* and *303 Creative* Further Underscore Risk and Standing Here.

   Like *Mahmoud* and *Scott*, but more emphatically, *Shaw* imbued the alternative-timing holding of *SBA List*—"'substantial risk' that the harm will occur"—with new force. 166 F.4th at 75. And *303 Creative* applies as well. Both apply here despite their issuance dates. *Supra* at 13.

   *Shaw* involved interstate drivers claiming constitutional injury from traffic-enforcement practices of the Kansas Highway Patrol. "To begin, Plaintiffs have demonstrated 'a substantial risk' that they will have another traffic stop encounter with KHP." 166 F.4th at 75 (relying on *SBA List*). "[T]here is a substantial risk that Plaintiffs—no matter how carefully they try to follow traffic laws—will be pulled over by KHP at some point again." *Id.* at 76. Due to the "systematic repetition

of" KHP practices, there is "a substantial risk of future harm to Plaintiffs[.]" *Id.* at 77 n.10.

*Shaw* found substantial risk (even imminence) despite evidence that "the probability of a given driver being stopped by KHP is 0.41 percent," *id.* at 76 n.8, i.e., *less than one half of one percent*. The panel rejected these tiny odds and credited the finding below that "out-of-state drivers are stopped at 'disproportionately high rates compared to drivers who are Kansas residents.'" *Id.* The panel never specified new odds of a random non-Kansan being pulled over, but obviously such a risk must be quite low. (If the odds were even ten percent, who would risk driving through Kansas at all?) As to Samaritan, surely "[t]he odds in [its] case are far greater." *Id.* at 77.

*Shaw* did not stop there. It joined "fellow circuit courts [that] have held that discrete groups targeted by law enforcement have standing to challenge an unconstitutional 'pattern of officially sanctioned ... behavior, violative of the plaintiffs' rights.'" *Id.* at 77. HCSMs are such a discrete group[7] and "it would make little sense to deny standing to these plaintiffs." *Id.* at 78. "The purpose of standing doctrine is to ensure that our court is judging 'the legal rights of litigants in actual controversies' .... [T]he extensive record [here has] proven that they have a genuine and particularized interest and fear in how they will be treated by [Defendant] in the future[.]" *Id.*

*303 Creative* involved a web designer who had yet to offer wedding website services. She sued to protect her right to refuse to create custom wedding sites affirming gay marriage, though she expressly did not otherwise refuse to serve gay customers. 6 F.4th at 1172-73. As to *SBA IIF #2*, the court concluded that "arguably proscribed by statute" was met when only a very narrow slice of conduct was even *possibly* proscribed by state law. *Id.* ("at least *some*" intended "conduct arguably would" violate state law) (emphasis *retained*). The court also informed its analysis with

---

[7] Samaritan is part of an even smaller discrete group. It is one of only seven of the 107 U.S. government certified HCSMs (including, e.g., Liberty, OneShare, CCM) that operate nationwide.

the state's assertions about what state law meant. Both these elements apply equally here.

As to *SBA IIF #3*, the court ruled that plaintiffs "have a credible fear of prosecution because" their "potential liability is inherent in the manner they intend to operate." *Id*. at 1173. The court also credited state enforcement history in other contexts, the option of non-state actors prompting enforcement by filing a complaint, and the state's failure to disavow. All those elements apply here. Moreover, Samaritan's potential liability is inherent not just in the way it "intends" to operate but in the way it has operated for over 30 years and intends to continue operating.

### F.    Defendant Agrees on Lack of Identical Issues Actually and Fairly Litigated.

Defendant lists the same basic issue-preclusion elements, MTD at 6-8, but anticipates hardly any of Plaintiffs' arguments herein, e.g., the elephant in the room: her own 2024 admissions. Defendant also asserts that Plaintiffs faced no "procedural limitations" during *SMI-I*. MTD at 9. If by this Defendant means to guarantee issue preclusion for all litigation whose *routine procedures* were fair, such a proposition contradicts Plaintiffs' authorities cited above and Defendant cites none of her own. As for actual limitations that were unfair, surely Defendant is aware that both *SMI-I* courts refused to consider *then* her own admissions that are front and center *now*.

### G.    Defendant's Timeline for Change of Fact/Law Exception Is Partly Wrong.

Defendant asserts the "material change in circumstances" must have "occurred subsequent to the original *dismissal*." MTD at 9 (referring to this Court's dismissal of 12/20/24). Such a rule might make more sense in other circuits. *E.g.*, *Scahill*, 909 F.3d at 1184 ("we hold that a plaintiff may cure a standing defect … through an amended pleading alleging facts that arose after filing the original complaint"). That option was not available here, which is why *SMI-II* was required. *Supra* at 3-5.[8] So, in this Circuit, Defendant's dismissal-based timing rule applies only to changes

---

[8] Defendant relies on cases where plaintiffs *failed* to assert facts *available prior to the first suit*.

of law. *Supra* at 12-13. For changes of fact, the timeline starts with the original complaint. *Id*.

### H.    The Change-in-Law Exception Is Not Relevant to NMIC Provisions Here.

Defendant reasserts preclusive force for the Tenth Circuit's holding on NMIC's "statutory definition of insurance," MTD at 9, which includes, in her view, the whole list of NMIC statutes she applies to HCSMs, VC2 at ¶45. Defendant also claims the change-in-law exception is inapt here, because none of those NMIC sections changed significantly since this Court's 12/20/24 dismissal. MTD at 10. The latter proposition is a curious one. ***First***, Defendant offers no rationale or authority, and Plaintiffs are aware of none. *Supra* at 13 & n.2. ***Second***, it confuses issue preclusion with *claim preclusion*, whose issues "could have been raised and decided in a prior action." *Lucky Brand*, 590 U.S. at 412. Thus, it wrongly suggests that Plaintiffs were obligated to cite all applicable statutes in their complaint or risk preclusion. ***Third***, even if those statutes were apt here, they could at most satisfy only the "legally" half of the requirement that the two suits be "substantially static, factually and legally.'" *Herrera*, 587 U.S. at 343.

### I.    Plaintiffs Have Alleged and Explained How NMIC Applies to Samaritan.

As to the "numerous provisions of" NMIC that "Plaintiffs now cite," MTD at 10 (referring to VC2 at ¶45), Defendant claims "Plaintiffs fail to show or explain how any of the cited provisions apply to Samaritan," *id*. In fact, Plaintiffs alleged their application to Samaritan as follows. ***First***, under Defendant's admission, OSI "has taken enforcement action against several entities operating programs similar to the Samaritan program," VC2 at ¶64(a), and those OSI enforcement orders detail precisely how the whole list of statutes applies to "programs similar to" Samaritan's, *id*. ***Second***, Samaritan facilitates the sharing of medical expenses among its members, *id*. at ¶35, including N.M. residents, as a federally recognized HCSM, *id*. at ¶¶19, 35, which Defendant has determined is "unauthorized insurance" under NMIC §59A-1-5, VC2 at ¶64(f) (SMI "engages in

an activity that fits [NMIC]'s definition of insurance"); *id*. at ¶51 (all HCSMs are "unauthorized insurance" and must submit to OSI to rectify their "unauthorized status"); *id*. at ¶60 (SMI admits it is unlicensed in N.M. wherefore §59A-5-10(A) would subject it to NMIC). ***Third***, Samaritan's ministry involves agreements "to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services," NMIC §59A-16-21.2(C)(1); VC2 at ¶46, which Defendant has determined qualifies as a "health benefit plan" subject to NMIC under §59A-15-16, VC at ¶59. ***Fourth***, as Plaintiffs concede, every HCSM in N.M. (e.g., SMI) "arguably provides 'insurance' and/or 'health benefits plans,' acting as an unlicensed insurer in N.M." VC2 at ¶46. Therefore, Samaritan's constitutionally protected activity in N.M. is arguably prohibited by NMIC.

### J.    Plaintiffs Allege Concrete Harms, Not Generalized Grievances.

Defendant says Plaintiffs' harms are "abstract" and not "concrete," MTD at 11, as she did with Liberty by suggesting it is litigating "generalized grievance[s]" shared by the public or large segments of it.[9] Or, as Defendant put it in *SMI-I*, Plaintiffs are suing over the mere "presence of a statute," ECF.42 at 10 & ECF.52 at 10-11, or a "general legal, moral, ideological, or policy objection," ECF.42 at 9 & ECF.52 at 10, or "abstract [policy] disagreements" without "effects felt in a concrete way," ECF.4 at 6 & 8; ECF.42 at 11; ECF.52 at 12. *Bost* dooms this argument. It held that harms much less concrete than those here "plainly affect" plaintiffs in a "'personal and individual way,'" not "as generalized grievances." 146 S.Ct. at 521.

### K.    Defendant's Own Actions Have Bolstered the Credible Threat.

Defendant claims she has taken no enforcement action against any HCSM since her tenure began on **6/12/23**. MTD at 11-12. That rings hollow. On **2/19/24**, Defendant stated to this Court

---

[9] *Gospel Light ("**Liberty**") v. NM OSI*, 2023 WL 4546544, at *4 (D.N.M. July 14, 2023), *on recon.*, 2023 WL 6686684 (D.N.M. Oct. 12, 2023), *aff'd sub nom.*, *Renteria v. NM OSI*, 2025 WL 635754 (10th Cir. Feb. 27, 2025), *cert. pet. pending*, 25-113 (awaiting brief of Solicitor General).

that Samaritan fits NMIC's definition of insurance, that its continued operations outside NMIC are harmful to the public interest, and that she intends to countersue Samaritan if this case proceeds. *Supra* at 15-17. On **3/4/24**, she certified in *Liberty* discovery that she embraced OSI's determination that all HCSM programs since at least 3/26/20 are *unauthorized insurance* under NMIC, that all unlicensed HCSMs in N.M. are operating illegally, and that all such HCSMs are duty-bound to submit to her authority. *Id.*; VC2 at ¶¶45, 64. She reaffirmed her worst threats to Samaritan on **2/19/24**. ECF.63 at 9, 22-23. And she litigates against Liberty to **this very day**. *Supra* at 23 n.9 (cert. pet.). At no time has Defendant renounced, softened, or even clarified her above actions as they might relate to Samaritan. She has never remotely disavowed enforcement against Samaritan. In short, she has taken no steps to relieve Plaintiffs of their credible fears. *Supra* at 15-17, 22-23.

## L.    Defendant's Comity Argument Wanes Since *Loper Bright*.

Defendant argued in *SMI-I* that "comity requires this Court to decline jurisdiction," ECF.20 at 6; *id.* at 12-13, to give "deference to the expertise of state agencies," ECF.42 at 18; ECF.52 at 19 (same). This argument lost steam after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (reducing deference to agencies). It also means Defendant wants to have her cake and eat it, too. The double standard is that Defendant prevailed on abstention in *Liberty*, where Liberty awaited a C&D and then challenged it in federal court. *Liberty*, 2023 WL 4546544, at *6-7. Now she argues Samaritan lacks standing for its current federal action and thus must also await a C&D, so she can argue abstention. The goal is to whipsaw HCSMs and deny them a federal forum.

## VII.    CONCLUSION.

The jurisdictional issues between *SMI-I* and *SMI-II* have remained anything but "static, factually and legally." *Herrera*, 587 U.S. at 343. The MTD should be denied and this case moved as expeditiously as is feasible toward a merits determination of Plaintiffs' rights.

Dated this **25th** day of **February, 2026** and respectfully submitted,

 /s/ *J. Matthew Szymanski*
J. Matthew Szymanski, Bar #23-267
Scott J. Ward, Bar #23-361
GAMMON & GRANGE, P.C.
1945 Old Gallows Rd., Tysons, VA 22182
JMS@gg-law.com; SJW@gg-law.com
(703) 761-5030; (703) 761-5012

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2026, a true and correct copy of the foregoing was

filed and served via the CM/ECF system.

 /s/ *J. Matthew Szymanski*
  Counsel for Plaintiffs