**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

SAMARITAN MINISTRIES INTERNATIONAL,
a religious Illinois non-profit corporation, and
eight of its members, namely Zachary and Rachel
Cordel, Andrew and Heather Heath, Jay and Amy
O'Neill, and Nathan and Rebekah Bienhoff,

Plaintiffs,

v. Case No. 1:25-cv-01250-LF-SCY

ALICE T. KANE, in her personal capacity and
in her official capacity as the New Mexico
Superintendent of Insurance,

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

This matter comes before the Court on Defendant Alice T. Kane's motion to dismiss, filed January 14, 2026. Doc. 6. Plaintiffs also have filed an unopposed motion for oral argument. Doc. 17. Superintendent Kane seeks to dismiss plaintiffs' complaint for failure to state a claim under which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at 1. She argues that issue preclusion bars relitigation of this matter, which already was addressed before Judge Strickland in Case No. 1:23-cv-01091-MIS-SCY, and before the Tenth Circuit in Case No. 24-2187. The matter is fully briefed, including a surreply and two notices of supplemental authority. *See* Docs. 6, 12, 13, 16, 19, 21. Having reviewed the parties' submissions and the applicable law, the Court GRANTS the motion to dismiss (Doc. 6) and DENIES plaintiffs' unopposed motion for oral argument (Doc. 17).

## BACKGROUND

Samaritan Ministries International ("Samaritan") is a health care sharing ministry ("HCSM"): a "tax-exempt public charity under § 501(c)(3) of the Internal Revenue Code" which "solicits its members to pray for, send notes to, and directly transfer funds to assist their fellow members with medical expenses." Doc. 1 at 2. In 2020, the Office of the Superintendent of Insurance ("OSI") "caution[ed] consumers about heath care sharing ministries." Doc. 1 at 24. From then through 2023, OSI issued press releases and webinars discussing the differences between HCSMs and Affordable Care Act ("ACA")-compliant insurance plans, and it urged consumers to purchase ACA-compliant plans through New Mexico's health insurance marketplace, bewellnm.com. *See id.* at 25–31.

On December 7, 2023, plaintiffs brought an as-applied challenge in federal court to OSI's policy of "subjecting HCSMs like Samaritan to the Insurance Code." *Samaritan Ministries International v. Kane*, No. 1:23-cv-01091-MIS-SCY ("*Samaritan I*"), Doc. 1 at 14. After a series of amendments, the Second Amended Complaint became the operative pleading. *Samaritan I*, Doc. 50. OSI moved to dismiss that complaint. *Samaritan I*, Doc. 52. On December 20, 2024, District Judge Margaret Strickland granted the motion to dismiss for lack of standing. *Samaritan I*, Doc. 64, 760 F. Supp. 3d 1267 (D.N.M. 2024).

Plaintiffs appealed on December 27, 2024. *Samaritan I*, Doc. 66. On October 31, 2025, the Tenth Circuit held that in conducting its standing inquiry, it could not consider post-complaint statements that OSI made in its briefs before the district court and that OSI's staff made in discovery in a different case. *Samaritan I*, Doc. 71-1 at 5, 2025 WL 2876772, at *2 (10th Cir. 2025). It affirmed Judge Strickland's decision that plaintiffs lacked Article III standing. 2025 WL 2876772, at *4.

On December 15, 2025, plaintiffs filed this case. Doc. 1. Superintendent Kane moved to dismiss, arguing that no material change in circumstances has occurred since Judge Strickland's or the Tenth Circuit's decisions, and that the jurisdictional defects that caused *Samaritan I* to be dismissed still exist. Doc. 6 at 6. She further argues that issue preclusion bars relitigation of plaintiffs' standing. *Id.* Plaintiffs respond that neither Judge Strickland nor the Tenth Circuit considered plaintiffs' post-complaint facts, which "establish standing beyond doubt." Doc. 12 at 3.

## LEGAL STANDARD

### I. Issue Preclusion

Issue preclusion "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liability v. U.S. Dep't of Agriculture*, 378 F.3d 1132, 1136 (10th Cir. 2004). The elements of issue preclusion are

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* Issue preclusion applies to jurisdictional issues just as it does to issues on the merits. *Id.*; *Boulter v. Noble Energy Inc.*, 74 F.4th 1285, 1289 (10th Cir. 2023). An exception to the doctrine of issue preclusion "may be warranted if there has been an intervening change in the applicable legal context." *Herrera v. Wyo.*, 587 U.S. 329, 343 (2019) (internal quotation marks and brackets omitted).

## II. Standing

Article III of the United States Constitution confers jurisdiction to federal courts to decide "Cases" and "Controversies." *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008) (quoting U.S. Const. art III § 2). This requirement "is satisfied only where a plaintiff has standing." *Id.* (citation omitted). "Article III standing is a fundamental requirement for any party seeking relief in federal court." *United States v. Colo. & Eastern Railroad Co.*, 882 F.3d 1264, 1269 (10th Cir. 2018). To establish standing, a plaintiff must prove that

> (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*People for Ethical Treatment of Property Owners v. U.S. Fish & Wildlife Serv.*, 852 F.3d 990, 996–97 (10th Cir. 2017). A plaintiff may satisfy the injury-in-fact requirement based on an imminent threat of government action against it: "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotation marks omitted).

# DISCUSSION

## I. Precluded Matters

As an initial matter, in determining what issues may be precluded in this case, the Court finds it prudent to outline exactly what was decided in the previous litigation.

### A. Summary of Previous Litigation

Judge Strickland dismissed *Samaritan I* for lack of standing "as a threshold matter." *Samaritan I*, 760 F. Supp. 3d at 1279. She did not reach the merits of the case, nor did she reach

every element of the standing inquiry; she determined that "Plaintiffs have failed to allege an actual or imminent injury that is [concrete] and particularized for any of the twelve counts" raised in that case, so it was unnecessary to address the elements of traceability and redressability. *Id.* at 1274, 1279. Plaintiffs argued that they faced a credible threat pursuant to *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014), that the New Mexico Insurance Code would be enforced against them. *Samaritan I*, 760 F. Supp. 3d at 1273–74. They also argued that they had "existing damages based on potential memberships lost." *Id.* at 1274. Judge Strickland construed plaintiffs as arguing that they had standing to bring 1) pre-enforcement claims for injunctive and declaratory relief, 2) claims for prospective damages related to existing harms, and 3) individual-capacity claims by the individual plaintiffs for retrospective relief. *Id*.

With regard to the first category, Judge Strickland concluded that plaintiffs' constitutional interests were not arguably proscribed by OSI's policy and that plaintiffs did not face a credible threat of enforcement, both of which are requirements for a plaintiff seeking to bring pre-enforcement claims under *Susan B. Anthony List*. *Id.* at 1274–75. With regard to the "arguably proscribed" prong, she stated that plaintiffs failed to "identify with particularity an OSI policy" that proscribed their conduct. *Id.* at 1275. With regard to the "credible threat" prong, she found that OSI's press releases did not "support an actual and well-founded belief in imminent threat" based on their content, *id.* at 1275–76; that an email from OSI stating that a different HCSM "must be licensed as an insurance company" did not indicate "impending adjudication or other formal process" directed at any HCSM, *id.* at 1276; and that the HCSMs that have faced adjudication from OSI were distinguishable from Samaritan, *id.* at 1276–77. She also observed that the ongoing litigation between OSI and Liberty HealthShare (*Gospel Light Mennonite Church Medical Aid Plan v. Office of the Superintendent of Insurance*, No. 1:23-cv-00276-MLG-

KK (D.N.M.)) did not demonstrate any aggression against HCSMs by OSI because Liberty instigated the litigation at issue. *Id.* at 1277–78. As she considered these factual matters, she also held that she was required to consider standing "based on circumstances at [the] time of filing the initial complaint" and therefore could not consider post-complaint facts. *Id.* at 1275 n.4.

"Having found that Plaintiffs have not alleged a credible threat of enforcement," Judge Strickland held that she could not "logically reach the conclusion that Samaritan's actions based on those fears"—turning away prospective members, diverting resources, and enduring reputational harm—"add up to an injury in fact." *Id.* at 1278. And, with regard to individual-capacity nominal damages "as retrospective relief for violations of the individual Plaintiffs' constitutional rights as generally described in each count of the Complaint," Judge Strickland concluded that the individual plaintiffs were active members of Samaritan; they had not been burdened because they were not prevented from participating in Samaritan, and they therefore were "not seeking retrospective relief at all and [were] in fact asking for prospective relief based on [fears that their rights will be burdened in the future]." *Id.* at 1278–79. Accordingly, she concluded that claims for damages based on past injuries could not establish standing for the individual plaintiffs because they had not articulated any past injuries. *Id.* at 1279.

The Tenth Circuit affirmed Judge Strickland's holding. *Samaritan I*, Doc. 71-1 at 2, 2025 WL 2876772, at *1. It addressed "post-complaint statements Defendant made (in her briefs before the district court in this case and in discovery in a different case)" and held that Judge Strickland "correctly concluded that the post-complaint statements [could not] establish standing to proceed in this action" because standing "is evaluated as of the time an action begins." 2025 WL 2876772, at *2.

With regard to plaintiffs' argument that they challenge "OSI's new functional imperative policy for applying the statutory definition of insurance to HCSMs," the Tenth Circuit agreed with Judge Strickland that "New Mexico's statutory definition of insurance does not proscribe any conduct" and that "Plaintiffs did not allege that any other statute proscribes their conduct." *Id.* at *3 (internal quotation marks omitted). The Tenth Circuit therefore agreed that plaintiffs did not meet the "arguably proscribed" prong.

Finally, the Tenth Circuit agreed that OSI's enforcement actions against other HCSMs did not demonstrate that an enforcement action against Samaritan was imminent. *Id*. It "agree[d] with the district court's conclusions" that the other investigations were based on "circumstances unique to the parties involved." *Id.* It addressed plaintiffs' argument that no past threat was necessary, explaining that while a credible threat of prosecution can exist in the absence of any actual threat made to a plaintiff, those circumstances generally involve "a challenged provision [that] on its face proscribes the conduct in which a plaintiff wishes to engage" along with a state that has "not disavowed any intention of involving the provision against the plaintiff." *Id.* Because the statute at issue in this case did not "facially proscribe any conduct, let alone the conduct [plaintiffs wished] to engage in," plaintiffs could not establish standing in this manner. *Id*.

**B. Precluded Issues in *Samaritan II***

Having established what was decided by previous courts, this Court now turns to what is precluded. That answer is simple, albeit broad: all issues reached by the previous courts. Judge Strickland's decision and the Tenth Circuit's decision are both final adjudications on the merits. Samaritan and the individual plaintiffs, the parties against whom issue preclusion currently is invoked, were parties to the *Samaritan I* litigation. And Samaritan and the individual plaintiffs

had a full and fair opportunity to litigate the issues in the prior action. Therefore, pursuant to *Park Lake*, 378 F.3d at 1136, issue preclusion applies. As will be addressed below, the previous courts did not consider the 2024 jurisdictional facts, so their application to the standing inquiry is not precluded. Beyond those new facts, however, preclusion carries the day.

Plaintiffs attempt to carve out various exceptions to this broad holding. They argue the following: 1) with regard to future-injury standing, the previous courts did not address all three *Susan B. Anthony List* elements; 2) the Tenth Circuit did not address Judge Strickland's holding on actual-injury standing and therefore that issue is not precluded; and 3) neither court considered the 2024 jurisdictional facts. Doc. 12 at 8–9. They also argue that 4) Judge Strickland evaluated the facts at issue in *Samaritan I* "under a higher standard than precedent requires," thereby failing to "accord those facts their due legal significance" and rendering issue preclusion inappropriate. *Id.* at 10–11; *see also id.* at 20–23 (arguing for changed legal standard). Further, they argue that 5) the Tenth Circuit's ruling that the New Mexico Insurance Code's "statutory definition of insurance does not proscribe any conduct" is not preclusive because it is an abstract ruling of law. *Id.* at 11. The Court addresses each matter in turn.

1. *Addressing all three* Susan B. Anthony List *elements was unnecessary because failure to satisfy any element is fatal to pre-enforcement standing.*

Issue preclusion applies to matters upon which a party has "suffered an adverse determination." *Park Lake*, 378 F.3d at 1136. Of course, any issues that the previous court did not reach are not precluded. But all elements of the *Susan B. Anthony List* test must be met to find future-injury standing. *See Samaritan I*, 760 F. Supp. 3d at 1274 ("That Plaintiffs engage in a course of conduct with a constitutional interest is not in question. However, the remaining two elements are."); *see also id.* at 1279 (concluding that the plaintiffs lack standing even though one element of the test was not in dispute). Indeed, the very text of *Susan B. Anthony List* makes this

plain: "[W]e have held that a plaintiff satisfies the injury-in-fact requirements where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, *and* there exists a credible threat of prosecution thereunder." 573 U.S. at 159 (emphasis added).

Certainly, issues not addressed by the district court or the Tenth Circuit are not precluded, and these courts did not address every possible issue. Nonetheless, the mere fact that "only certain aspects" of the *Susan B. Anthony List* test were "actually decided" does not prevent those decided matters from being preclusive as a matter of law. Further, if any one of the *Susan B. Anthony List* elements was not satisfied, and if that determination is preclusive, plaintiffs' pre-enforcement standing arguments cannot succeed in this case.

2. *The Tenth Circuit did not address actual injury, so the district court's decision remains the final adjudication of that issue on the merits.*

Plaintiffs argue that because the Tenth Circuit addressed only future-injury standing, not actual-injury standing, "and since new facts must now be considered, that issue cannot be precluded." Doc. 12 at 8. Those are two separate arguments, and the Court will address the matter of the new facts separately. Plaintiffs make clear that they believe the failure-to-address argument stands alone: "[T]he Tenth Circuit in [*Samaritan I*] addressed neither manufactured nor retrospective harm. Since neither was addressed, neither is precluded." *Id.* at 15; *see also id.* at 12 ("Matters Unaddressed by the Appellate Decision Are Not Subject to Preclusion.").

The Tenth Circuit affirmed Judge Strickland's decision in full. *Samaritan I*, 2025 WL 2876772, at * 4. No aspect of her decision was vacated. Her reasoning therefore applies in full force as a final adjudication on the merits for the purposes of issue preclusion. The case law that plaintiffs cite is inapposite; it applies to matters decided in the alternative. *See* Doc. 12 at 11–12. Plaintiffs' arguments about future-injury and actual-injury standing were not made in the

alternative. Rather, each argument applied to different claims: claims for future injuries and claims for injuries that already had occurred. *See Samaritan I*, 760 F. Supp. 3d at 1274 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) for the proposition that plaintiffs must establish standing for each form of relief sought). Plaintiffs' citation to *Levi Strauss v. Abercrombie & Fitch*, 719 F.3d 1367, 1373 (Fed. Cir. 2013), Doc. 12 at 12, also does not support their proposition that an appellate decision strips the district court ruling of its issue preclusive effect. *Levi Strauss* involved a dispute whose "scope . . . exceed[ed] what the parties litigated in the district court" in the first instance. "Because of the difference in scope of the issues . . . this pattern represents no improper second bite at the apple[.]" *Id.* at 1373–74. That is, it was not the difference in the scope of issues between a district court ruling and an appeal of that ruling, but the difference in scope between the preclusive ruling and the new litigation, that mattered to the Federal Circuit in *Levi Strauss*. Plaintiffs' quotation removes important context that distinguishes that case from this one.

Plaintiffs have not provided, nor has the Court found, any case law supporting the notion that a district court decision which was affirmed on appeal is not a final adjudication on the merits for the purposes of issue preclusion. Indeed, what little the Court can find suggests the contrary: that the district court's decision has preclusive effect. For example, Wright and Miller's Federal Practice and Procedure discusses how an appellate court may "declare[] that a trial court ruling on an issue was not essential to the judgment and should not have issue-preclusion consequences"—an action which would be pointless if the trial court's decisions automatically lost preclusive effect after an appeal. 18 FED. PRAC. & PROC. JURIS. § 4424.1 (3d ed.). The Tenth Circuit characterized Utah state law on issue preclusion more plainly: "Utah law provides that, unless it is reversed on appeal, a judgment is final for issue preclusion purposes." *Atiya v. Salt*

*Lake Cnty.*, 988 F.2d 1013, 1020 (10th Cir. 1993). In the absence of case law to the contrary, and with some persuasive authority supporting what reason already counsels, the Court concludes that Judge Strickland's decision, which was affirmed on appeal, retains preclusive effect.

*3. The 2024 post-complaint facts were not considered by any previous court, and this Court is not precluded from considering them for the first time.*

Plaintiffs argue that in *Samaritan I*, Superintendent Kane and OSI made statements relevant to standing, but because those statements were made after the complaint was filed, they were not considered. Doc. 12 at 5. This is true: as both Judge Strickland and the Tenth Circuit concluded, it was not proper for them to consider those statements in *Samaritan I*. *Samaritan I*, 760 F. Supp. 3d at 1275 n.4; *Samaritan I*, 2025 WL 2876772, at *2. Plaintiffs assert that they filed the new case, *Samaritan II*, so a court could consider the 2024 jurisdictional facts. Doc. 12 at 6.

Because the complaint in *Samaritan I* was filed on December 7, 2023, *Samaritan I*, Doc. 1 at 14, none of the 2024 facts were, or could have been, considered in the standing analysis. Case law generally prohibits refiling a suit "over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements." *Gas Sensing Tech. Corp. v. Ashton*, 795 F. App'x 1010, 1018 (10th Cir. 2020) (citation omitted); *see also Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agriculture*, 378 F.3d 1132, 1137 (10th Cir. 2004) ("[T]he change in circumstances that cures the jurisdictional defect must occur subsequent to the prior litigation."). Although the 2024 facts were known to plaintiffs (as well as defendants, the district court, and the Tenth Circuit) before *Samaritan I* was closed, they had not occurred at the time plaintiffs filed *Samaritan I*, rendering it impossible for plaintiffs to have brought them before the relevant deadline (that is, the time of filing).

Issue preclusion means that this Court may not reevaluate the decisions that Judge Strickland and the Tenth Circuit made in *Samaritan I*. But because those judges could not consider the 2024 facts, this Court may determine the narrow question of whether those facts, alone or in combination with the other jurisdictional facts, establish standing. To be clear, the issue of whether the pre-2024 jurisdictional facts *alone* are sufficient to establish standing is resolved and precluded. Only the new facts—including any interplay that the new facts have with the old facts—are at issue. The Court will consider them below.

*4. The legal standard has not changed between* Samaritan I *and the current case.*

Plaintiffs argue that Judge Strickland's analysis of the *Susan B. Anthony List* factors took place "under a higher standard than precedent requires," thereby failing to accord those facts "their due legal significance." Doc. 12 at 10 (quotation marks omitted). They argue that because she applied a higher burden than the Court should apply in this case, issue preclusion is inappropriate. *Id.* at 11.

If courts apply different legal standards, then issue preclusion may not apply. *See, e.g.*, *Truman v. Johnson*, 60 F.4th 1267 (10th Cir. 2023) (issue preclusion did not apply between state criminal case and federal civil case because of different burdens of proof). Here, however, the legal standard has not changed. Judge Strickland, the Tenth Circuit, and this Court all consider the *Susan B. Anthony List* factors to determine whether plaintiffs have standing on the future-injury question. The Court will not reconsider issues that Judge Strickland already decided[1]

[1] Though it need not reach the question, the Court believes Judge Strickland's analysis *was* correct. Plaintiffs argue that they "need not show their conduct actually violates the law, just that it arguably does, and the evidentiary bar for credible threat is extremely low" pursuant to case law. Doc. 12 at 8 (cleaned up). But Judge Strickland explicitly stated that she was "not persuaded that Plaintiffs' constitutional interests are arguably proscribed by OSI policy." Doc. 64 at 8. This is the very "arguably" standard that plaintiffs claim she did not apply.

because, for issue preclusion purposes, she applied the same test based on the same precedent currently at issue in *Samaritan II*. Plaintiffs' separate-standards argument against applying issue preclusion is not persuasive.

Nor has the legal standard applicable to this case been modified by subsequent case law. Plaintiffs argue that *Mahmoud v. Taylor*, 606 U.S. 522 (2025), modified controlling legal principles, justifying an exception to issue preclusion. Doc. 12 at 20. But *Mahmoud* did not modify the relevant standard for future harm. *Mahmoud* cites to *Susan B. Anthony List* and repeats its well-known holding that "to pursue a pre-enforcement challenge, a plaintiff must show that the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." 606 U.S. at 560. It held that the parent-plaintiffs were not required to wait for their children's school to burden the children's religious exercise before the parents had standing to sue because the school board had "clearly stated how it intend[ed] to proceed," and therefore the parents could "base their First Amendment claim on the Board's representations." *Id.* This holding does not alter the standard set in *Susan B. Anthony List*, and it is distinguishable from the present case because, as discussed in greater detail below, Superintendent Kane has not stated an intent to prosecute Samaritan.

Plaintiffs also argue that *Scott v. Allen*, 153 F.4th 1088 (10th Cir. 2025), modified controlling legal principles. Doc. 12 at 20. Like *Mahmoud*, *Scott* reiterates and applies the *Susan B. Anthony List* standard. 153 F.4th at 1091, 1096. The Court therefore does not consider it a change in the legal landscape sufficient to warrant an exception to issue preclusion.[2]

---

[2] Any additional light that *Scott* sheds on the analysis of the *Susan B. Anthony List* elements of course remains binding Tenth Circuit precedent. *Scott* reiterates the *Susan B. Anthony List* holding that a plaintiff need not "confess that he will in fact violate the law" to obtain standing. 153 F.4th at 1095. It also discusses the relevance of "non-disavowal of future enforcement" to

Plaintiffs cite other cases in depth. *See* Doc. 12 at 21–23 (citing *Shaw v. Smith*, 166 F.4th 61 (10th Cir. 2026) and *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023); Doc. 19 (citing *First Choice Women's Centers v. Davenport*, 608 U.S. —, 146 S. Ct. 1114 (2026)). The Court interprets plaintiffs' discussion of these cases as being for the purpose of explaining and clarifying, rather than arguing that they modify existing legal standards. That is, plaintiffs' references to *Shaw*, *303 Creative*, and *First Choice Women's Centers* support their standing argument, not their "changed legal landscape as exception to issue preclusion" argument. The Court therefore discusses these cases below when analyzing the new jurisdictional facts.

5. *The legal question of whether the New Mexico Insurance Code proscribes any conduct is precluded; even if it were not, the Tenth Circuit's analysis is highly persuasive authority.*

Finally, plaintiffs argue that abstract legal conclusions—namely, the Tenth Circuit's statement that New Mexico's "statutory definition of insurance does not proscribe any conduct"—are not subject to issue preclusion. Doc. 12 at 11 (quoting *Samaritan I*, 2025 WL 2876772, at *3). In support of this proposition, they cite case law from other circuits as well as *United States v. Stauffer Chemical Company*, 464 U.S. 165, 171 (1984). *Id.* In *Stauffer*, the Supreme Court explained,

> [T]he doctrine of [issue preclusion] can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action. Our cases, however, recognize an exception to the applicability of the principles of [issue preclusion] for unmixed questions of law arising in successive actions involving unrelated subject matter.

464 U.S. at 170–71 (citations and quotation marks omitted). This language makes plain that as a general matter, legal issues also are subject to issue preclusion. An exception exists for pure legal questions in successive actions *involving unrelated subject matter*. That exception patently does

---

the "credible threat of prosecution" element. *Id.* at 1097. The Court considers this precedent when it analyzes the new jurisdictional facts *infra*.

not apply here; the subject matter of *Samaritan I* and *Samaritan II* is nearly identical except for two additional jurisdictional facts which were not considered in *Samaritan I*.[3] Issue preclusion therefore still applies to this issue of law.

Even if the exception did apply, the Tenth Circuit's decision is highly persuasive, and the Court would apply the same reasoning in this case. The parties, issues, statutory language, and arguments in support of standing have not changed between *Samaritan I* and *Samaritan II* with the limited exception of the 2024 jurisdictional facts. Although the Tenth Circuit's decision is unpublished, this Court finds its interpretation particularly persuasive in light of the similarities between the two cases.

**II. Alleged Post-Complaint Facts**

Having reviewed the parties' other arguments, the Court concludes that the issue of standing is precluded except as to the potential impact of the new facts. Plaintiffs identify the following post-complaint facts[4] as relevant to their standing.

[3] The quote from *Stauffer* in plaintiffs' briefing is misleading at best. Plaintiffs quote the following: "Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action . . . are not estopped from insisting that the law is otherwise." Doc. 12 at 11 (citing *Stauffer*, 464 U.S. 165, 170 n.3 (1984)). Footnote 3 of *Stauffer* states, "The description of the exception [for unmixed questions of law] in *United States v. Moser* is not very illuminating. There we stated: '[Estoppel] does not apply to unmixed questions of law. Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases.'" That is, the Supreme Court cited to the quote plaintiffs use as an example of *unhelpful* language regarding the exception. Further, plaintiffs employed an ellipsis to remove the words "upon a different demand"—important context which plainly distinguishes their circumstances from the quotation. This alteration by plaintiffs appears to be part of a larger pattern of taking language out of context, *see Samaritan I*, 760 F. Supp. 3d at 1275 n.4, 1278 n.8, and is inappropriate.

[4] The Court uses the phrase "post-complaint facts" to refer to factual allegations after the complaint in *Samaritan I* was filed—allegations which were not considered by Judge Strickland or the Tenth Circuit because they postdated the complaint in that case. The phrase as used in this Memorandum Opinion and Order does not refer to facts which postdate the complaint in *this* case, *Samaritan II*, which was filed on December 15, 2025.

1. On March 4, 2024, in the case *Gospel Light Mennonite Church Medical Aid Plan v. Office of the Superintendent of Insurance*, Superintendent Kane "faulted Plaintiffs' operation of a heath care ministry in New Mexico without a Certificate of Authority despite the notifications from OSI in its Press Releases regarding HCSMs." Doc. 12 at 4 (italics, quotation marks, and brackets omitted). Superintendent Kane stated that a press release from OSI indicated that an HSCM is an unauthorized insurance product under the New Mexico Insurance Code, that a cease and desist order was being issued against an HCSM the same day as the press release, and that the doctrine of laches was invoked because Liberty HealthShare, the HCSM plaintiff in the *Gospel Light* case, did not come forward to rectify its unauthorized status with OSI. *Id.* at 4–5.
2. On February 19 and December 19, 2024, in *Samaritan I*, Superintendent Kane "asserted that Samaritan fits the NMIC [New Mexico Insurance Code] definition of insurance, Samaritan's continued operations out of NMIC are harmful and adverse to the public interest, and if this case proceeds, she will countersue Samaritan." *Id.* at 5 (internal quotation marks and brackets omitted).

The Court addresses these facts and their effect on plaintiffs' standing *infra*.

### A. March 4, 2024, Statements in *Gospel Light*

The Court looks first to the March 4, 2024, statements in *Gospel Light*. In that case, the plaintiff, Liberty HealthShare, issued an interrogatory to OSI seeking details to support OSI's defense of laches. *Samaritan I*, Doc. 50 at 40. According to the Second Amended Complaint in that case, OSI responded,

> **RESPONSE**: Subject to and without waiving the foregoing objection, Defendant's inclusion of the affirmative defense of the doctrine of laches references Plaintiffs' operation of a health care ministry in New Mexico without a Certificate of Authority despite the notifications from the Office of

> Superintendent of Insurance in its Press Releases, dated December 3, 2019, March 26, 2020, and its March 2021 Tip of the Month regarding HCSM's. The March 26, 2020 Tip of the Month from Superintendent Toal specifically indicates that a HCSM is an unauthorized insurance product under the New Mexico Insurance Code. In the same press release Superintendent Toal also stated that a Cease and Desist Order was being issued against a HCSM that day. The doctrine of laches is invoked because Plaintiff did not come forward to rectify its unauthorized status with OSI.

*Id.* Samaritan argues that this statement establishes standing because it certifies "that all HCSMs (obviously including Samaritan) are 'unauthorized insurance products' in violation of NMIC." Doc. 12 at 18 n.5.

The Court disagrees. OSI's response takes place in the context of an affirmative defense. "The laches defense bars a party's dilatory claim . . . when there is: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036, 1090–91 (10th Cir. 2014); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 333 (2017) ("Laches is a defense developed by courts of equity to protect defendants against unreasonable, prejudicial delay in commencing suit."). A laches defense in this context would argue, at base, that Liberty HealthShare unreasonably delayed in bringing its claim and that this delay prejudiced OSI in the lawsuit. Arguing that Liberty HealthShare should have brought a lawsuit sooner based on the facts available to it is completely different from arguing that *Samaritan*, a separate organization and nonparty to that case, should have looked at those same facts and predicted that it would be subject to enforcement action by OSI. To the extent this statement discusses the legitimacy of HCSMs under the New Mexico Insurance Code, it repeats statements from its press releases in 2019, 2020, and 2021, all of which were thoroughly considered by Judge Strickland in *Samaritan I*; the issue of those statements' impact on standing is precluded. *See Samaritan I*, Doc. 64, at 10–11. The new information here only takes place in the context of

a discussion of laches specific to the *Gospel Light* case and is insufficient, on its own or alongside the other jurisdictional facts, to confer future-injury standing under *Susan B. Anthony List.*

OSI's response to the interrogatory also provides no support for plaintiffs' argument for actual-injury standing. The response does not harm plaintiffs' reputation or pocketbooks, nor does it increase the risk that they will face such harms in the future, nor does it shed new light on any other facts that would lead to that conclusion. It does not discuss plaintiffs at all. It is an interrogatory response from a case in which Samaritan is not involved, pertaining to litigation strategy within that case.

### B. February 19 and December 19, 2024, Statements by Superintendent Kane in *Samaritan I*

#### 1. *Prospective-Injury Standing*

Plaintiffs argue that Superintendent Kane's statement in *Samaritan I* that Samaritan "not only operated a program 'similar' to those she was prosecuting but was insurance operating harmfully/adversely/illegally outside NMIC and that she would countersue Samaritan if this case [*Samaritan I*] proceeds." Doc. 12 at 18 (footnotes omitted). It is true that Superintendent Kane stated that Samaritan was "an entity that engages in an activity that fits New Mexico's statutory definition of insurance." *Samaritan I*, Doc. 20 at 2; *see also Samaritan I*, Doc. 18 at 8 (OSI "has taken enforcement action against several entities operating programs similar to the Samaritan program."); *id.* at 18 (Samaritan's "continued operations outside of the Insurance Code are harmful and adverse to the public interest."); *see also Samaritan I*, Doc. 63 at 9, 23 (repeating assertions from Doc. 18). She also stated her intention to countersue Samaritan "litigating the dispute whether Samaritan is engaged in the business of insurance or otherwise transacting insurance in New Mexico" if the case proceeded. *Samaritan I*, Doc. 20 at 6.

The Court does not reach the question of whether these statements demonstrate that plaintiffs' conduct is arguably proscribed by an OSI policy or New Mexico statute. Even if they do, plaintiffs cannot meet their burden to satisfy the third *Susan B. Anthony List* requirement: a credible threat of enforcement. OSI's expression of willingness to bring a permissive counterclaim is not the same as expressing an intention to prosecute. Bringing a permissive counterclaim is a question of litigation strategy; OSI may have been considering potential settlement negotiations, the efficient use of judicial and government resources, the possibility of issue preclusion in future proceedings, or any number of other questions. At this stage, *Samaritan I* is complete, so the circumstances in which OSI expressed willingness to bring a permissive counterclaim no longer apply. Over eleven months have passed since the Tenth Circuit issued its decision in *Samaritan I*, and OSI has given no indication that it intends to take action against Samaritan in that time. Accordingly, the Court concludes that the 2024 statements do not give rise to a credible threat of enforcement.

This case is distinguishable from *Scott v. Allen*, 153 F.4th 1088 (10th Cir. 2025). In *Scott*, the plaintiff, a professional process server, attempted to serve a subpoena on Colorado State Trooper Charles Hiller. *Id.* at 1091. When Scott completed an affidavit of service by refusal (an interaction he recorded via bodycam), he asked the attorney who had requested service to redact Hiller's personal information before publicly filing the affidavit. *Id.* at 1091. The attorney agreed. Hiller then filed an administrative complaint against Scott with the Process Servers Association of Colorado, which found that Scott had violated its code of ethics because he had made Hiller's information available on the internet in violation of a Colorado statute. *Id.* Scott was expelled from the organization. *Id.* Scott filed suit because he wanted to publish the affidavit of service and his bodycam video of the incident on the internet, and he wanted to publish a

website to help serve law enforcement members more effectively and hold them accountable. *Id.* He had not done either of those things because of the threat of prosecution under the same Colorado statute that prohibited publicizing the personal information of a protected person on the internet; he sued seeking a declaration that the statute was unconstitutional. *Id.* The Tenth Circuit concluded that "at least one professional association believes that Scott violated the statute, and the District Attorney himself refuses to disavow that Scott's intended actions do not fall under the statute." *Id.* at 1097. Regarding the credible threat of prosecution, the Tenth Circuit noted that "non-disavowal of future enforcement remains a relevant factor for courts to consider in determining standing." *Id.* (citation omitted).

Crucially, *Scott* involves a statute which prohibits a particular action. In this case, the Tenth Circuit has held, explicitly, that the "statute Plaintiffs challenge does not facially proscribe any conduct, let alone the conduct they wish to engage in." *Samaritan I*, Doc. 71-1 at 8. This Court is bound by that preclusive holding, and even if it weren't, it would follow the Tenth Circuit's reasoning as persuasive authority. Therefore, *Scott* is distinguishable, and OSI's statements that Samaritan is an entity that fits New Mexico's definition of insurance do not establish a credible threat of enforcement.

For a similar reason, this case is distinguishable from *303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021) (*rev'd on other grounds*, *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023)).[5] *303 Creative* involved a Colorado website designer who had not yet offered wedding website services but sought to do so within the limitations of her religious convictions, which she stated prevented her from creating a website that promoted same-sex marriage. 6 F.4th at 1170.

---

[5] The Court limits its discussion of the Tenth Circuit case to its standing analysis, which was not reversed (or addressed at all) by the Supreme Court's majority opinion.

She filed suit arguing that Colorado's anti-discrimination statute, which prohibited discrimination on the basis of sexual orientation, was unconstitutional. *Id.* The Tenth Circuit found that she had standing based on an analysis of the *Susan B. Anthony List* elements. *Id.* at 1174. However, as discussed above, *303 Creative* involved a statute which prohibited the conduct in which the plaintiff sought to engage. Here, the Tenth Circuit ruled in *Samaritan I* that the statute at issue did not proscribe any conduct.

*2. Actual-Injury Standing*

Nor do the statements establish actual-injury standing. Plaintiffs cite to case law for the proposition that "when a plaintiff reasonably incurs costs to mitigate or avoid the substantial risk of a harm caused by a statute," the harms of those costs can confer standing. Doc. 12 at 19 (citing concurring opinion in *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 84 (2026)) (cleaned up). While this proposition is broadly true, it does not solve plaintiffs' problem: they have not demonstrated a substantial risk of harm.[6] OSI's statements in *Samaritan I* espousing a belief that Samaritan is engaging in what New Mexico law considers the business of insurance do not equate to a substantial risk that OSI will prosecute Samaritan for violations of the New Mexico Insurance Code.

Plaintiffs cite to *Shaw v. Smith*, 166 F.4th 61 (10th Cir. 2026), to emphasize the low bar for "substantial risk." Doc. 12 at 21–22. In *Shaw*, plaintiffs were out-of-state drivers who had

[6] *Bost* sheds little light on what qualifies as a substantial risk outside the context of political campaigns. *Bost* involved political candidates challenging Illinois' election procedures. The Supreme Court concluded that the "substantial risk" standard did *not* require a candidate to show a substantial risk that the election rules would cause them to lose the election, lose a "legally significant vote threshold," or "damage their reputation or finances." *Id.* at 79. Rather, the Court held that candidates had cognizable interests in "the rules that govern the counting of votes in their elections, regardless [of] whether those rules harm their electoral prospects or increase the cost of their campaigns," and they therefore had standing. *Id.* at 82–83.

been victims of police misconduct during traffic stops, and they obtained an injunction against the Kansas Highway Patrol (KHP) "to prohibit KHP from engaging in unconstitutional searches and seizures," specifically against "drivers and their passengers traveling in Kansas on I-70, I-35, U.S. Route 54,or U.S. Route 36 who have out-of-state plates and appear to be driving to or from Colorado." 166 F.4th at 73. On appeal, the Tenth Circuit held that the plaintiffs had standing because there was "a substantial risk that Plaintiffs—no matter how carefully they try to follow traffic laws—will be pulled over by KHP at some point again." *Id.* at 76. The Tenth Circuit came to this conclusion because traffic stops "are routine and beyond the control of drivers," the factual record established that out-of-state drivers were stopped at disproportionately high rates, and plaintiffs offered evidence to prove that they planned to continue traveling through Kansas on Kansas highways. *Id.* at 76–77. The Tenth Circuit employed a test for standing specific to the police context from *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), although it also cited *Susan B. Anthony List*—a case examining standing for prospective injuries, not actual self-inflicted injuries based on a substantial threat of future action. 166 F.4th at 75. The court also relied on case law from sister circuits holding "that discrete groups targeted by law enforcement have standing to challenge an unconstitutional pattern of officially sanctioned behavior, violative of the plaintiffs' rights." *Id.* at 77 (quotation marks and ellipses omitted). The cases the court cited referred specifically to traffic stops based on racial profiling of Hispanic individuals and a policy of stopping and interrogating juveniles at family court. *Id.*

Despite plaintiffs' arguments to the contrary, the new evidence does not change the risk of enforcement in light of *Shaw*. Plaintiffs' arguments regarding the low probability of KHP stopping out-of-state drivers have no analogue in this case. And Plaintiffs' arguments regarding HCSMs being a discrete group subject to unconstitutional patterns of officially sanctioned

behavior are unavailing because that issue is precluded. The old evidence—the press releases, an email regarding an unrelated HCSM, and adjudications against other HCSMs—already was addressed in *Samaritan I*, *see Samaritan I*, 760 F. Supp. 3d at 1275–78, so the "substantial risk of enforcement" issue with regard to that evidence may not be resurrected here. OSI's 2024 statement that Samaritan was an entity fitting New Mexico's definition of insurance does not make enforcement any more likely—again, especially in light of the fact that it is now September 2026, and OSI still has not taken any action against Samaritan.

Next, the Court turns to plaintiffs' first notice of supplemental authority. Doc. 19. Plaintiffs alert the Court to *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. —, 146 S. Ct. 1114 (2026).[7] This case involves a religious nonprofit organization, First Choice Women's Resource Centers, Inc. ("First Choice"), "that has provided counseling and resources to pregnant women in New Jersey since 1985," but due to its religious beliefs, "does not provide abortions or refer clients to others for abortions." *Id.* at 1120. The Attorney General of New Jersey subpoenaed First Choice pursuant to New Jersey's Consumer Fraud Act, among others, and commanded First Choice "to disclose documents reflecting the names, phone numbers, addresses, and places of employment of all individuals who had made donations to First Choice" through a variety of means. *Id.* (internal quotation marks and ellipses omitted). The Supreme Court found that "[a]n objectively reasonable recipient of a demand like [the subpoena at issue] would be induced, as well, to trim its protected advocacy knowing it now stands in the government's crosshairs." *Id.* at 1127. The Supreme Court therefore found standing for actual

[7] Although this case involved arguments regarding both actual and prospective-injury standing, the Supreme Court addressed only actual-injury standing. *Id.* at 1122.

injury because First Choice's donors were deterred from associating with it based on the subpoena for donor information. *Id.* at 1122, 1131.

*First Choice Women's Resource Centers* addresses the question of whether a subpoena for an organization's donor information burdens that organization's exercise of its First Amendment rights "by deterring donors from associating with it." *Id.* at 1122. The facts in *Samaritan I* and this case—*Samaritan II*—are different. There is no allegation that OSI subpoenaed Samaritan or otherwise directed any demands specifically toward it. Its 2024 statement in *Samaritan I* that Samaritan was an organization that fit New Mexico's definition of insurance is not analogous to a subpoena for donor information. *First Choice Women's Resource Centers* therefore does not support plaintiffs' standing.

Finally, the Court addresses plaintiffs' second notice of supplemental authority. Doc. 21. This filing alerts the Court to cases out of the Western District of Michigan, the Eighth Circuit, the Ninth Circuit, and the District of South Dakota. *Id.* at 1. These cases cite to *Chiles v. Salazar*, 607 U.S. 627 (2026), as support for the conclusion that a credible threat of enforcement can exist solely when the state declines to disavow enforcement. *Right to Life v. Nessel*, No. 1:26-cv-390, 2026 WL 2117175, at *17 (W.D. Mich. July 10, 2026); *Minn. Voters Alliance v. Ellison*, — F.4th —, 2026 WL 2443854, at *3 (8th Cir. Aug. 20, 2026); *see also Arizona Alliance for Retired Ams. v. Mayes*, 186 F.4th 622, 638–40 (9th Cir. 2026) (similar argument but not citing *Chiles*); *Iowans for Alternatives to Smoking & Tobacco, Inc. v. Mosiman*, 183 F.4th 1040, 1049 (8th Cir. 2026) (same); *Mayday Health v. Rhoden*, No. 4:26-CV-04096-CCT, 2026 WL 2070966, at *8 (D.S.D. July 17, 2026) (considering whether prosecution was disavowed as part of standing analysis). Plaintiffs also cite to a Tenth Circuit case, *Pino v. Oliver*, 186 F.4th 750, 758 (10th Cir. 2026), in which the Court found that the plaintiff had a "continued personal stake in this controversy," and

therefore had established standing, when the plaintiff alleged that he intended to continue his course of conduct and the defendant "ha[d] not agreed to withdraw for the referral for enforcement already issued against Plaintiff, let alone disavow issuance of new referrals." *Id.* Crucially, however, these cases involve a credible threat of enforcement of a law that prohibits, or reasonably may be read to prohibit, the conduct at issue. None of these cases involve a statute that does not prohibit any particular conduct. These cases therefore are not analogous to the present dispute.

**CONCLUSION**

For the reasons discussed above, many issues in this case are precluded. The two factual issues that are not precluded do not suffice, on their own or in combination with the other facts, to establish actual-injury or prospective-injury standing for plaintiffs. Accordingly, the Court GRANTS the motion to dismiss (Doc. 6). A dismissal for lack of standing is without prejudice. *Rural Water Sewer & Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

Because the Court rules on this matter on the papers, plaintiffs' unopposed motion for oral argument (Doc. 17) is DENIED.

It is so ordered.

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE